UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC RIGGS,<br><br>        Plaintiff,<br><br>    v.<br><br>R.T.C. GROUNDS, et al.,<br><br>        Defendants. | Case No. 13-cv-05864-PJH<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT; STAY AND REFERRAL TO MEDIATION**<br><br>Re: Dkt. Nos. 49, 51 |

This is a civil rights case brought pro se by a state prisoner. The case proceeds against defendant correctional officer Cahlander regarding an allegation of excessive force. Both parties have moved for summary judgment. For the reasons set forth below the motions are denied.

**I.    MOTION FOR SUMMARY JUDGMENT**

    **A.    Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When

1   the moving party has met this burden of production, the nonmoving party must go beyond
2   the pleadings and, by its own affidavits or discovery, set forth specific facts showing that
3   there is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence
4   to show a genuine issue of material fact, the moving party wins.  *Id*.

5        For purposes of summary judgment, the court must view the evidence in the light
6   most favorable to the nonmoving party; if the evidence produced by the moving party
7   conflicts with evidence produced by the nonmoving party, the court must assume the
8   truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198
9   F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is
10  not to make credibility determinations or weigh conflicting evidence with respect to a
11  disputed material fact.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809
12  F.2d 626, 630 (9th Cir. 1987).

13     **B.**   **Facts**

14       The following facts are undisputed except where indicated otherwise:

15       At the relevant time plaintiff was an inmate incarcerated at Salinas Valley State
16  Prison ("SVSP").  Complaint at 1.  Defendant Cahlander was working as a correctional
17  officer at SVSP.  Defendant's Motion for Summary Judgment ("Defendant MSJ"),
18  Cahlander Decl. ¶ 2.  On February 7, 2012, Cahlander was helping other officers run the
19  shower program in plaintiff's housing area.  *Id*.  Cahlander was on the lower floor of the
20  facility area near the staff podium in the center of the dayroom.  *Id*.  The podium is a
21  raised open desk area approximately six-feet wide, where officers monitor and interact
22  with inmates.  *Id*.  The podium is out-of-bounds to inmates and is marked by painted lines
23  on the floor surrounding the podium area.  *Id*.

24       Plaintiff's cell door was opened so that plaintiff could take a shower.  Defendant
25  MSJ, Cahlander Decl. ¶ 3.  Plaintiff exited his cell and began yelling profanities at a non-
26  defendant correctional officer.  *Id*.  Cahlander ordered plaintiff to enter the lower shower
27  cell and close the door behind him, but plaintiff turned towards Cahlander and began
28  yelling profanities at him.  *Id*. ¶ 4.  Plaintiff then approached the end of the podium area

and the out-of-bounds line. *Id.*; Plaintiff's Opposition to Summary Judgment, Docket No. 55, ("Opposition") at 5.

### Cahlander's Facts

Defendant states the following occurred:

Plaintiff crossed the out-of-bounds line, entered the restricted area, opened a desk drawer, and retrieved two shaving razors. Defendant MSJ, Cahlander Decl. ¶ 4. Due to plaintiff's yelling of profanities and possession of the razors, Cahlander ordered him to put the razors down, at which point plaintiff yelled more profanities. *Id.* ¶ 5. Cahlander drew his pepper spray canister and ordered plaintiff to get down, but plaintiff assumed a boxer's stance while holding the two razors and took a step towards Cahlander. *Id.*

Cahlander administered a short burst from the pepper spray canister at plaintiff's upper body. *Id.* ¶ 7. Plaintiff turned away, dropped the razors and moved away five to seven feet. *Id.* Cahlander ordered plaintiff to assume the prone position on the floor. Plaintiff complied and was placed in hand restraints behind his back. *Id.*

While being escorted away, plaintiff yelled offensive and aggressive statements. Defendant MSJ, Lewis Decl., Ex. B at DEF 19. Plaintiff was provided an opportunity to decontaminate from the pepper spray. *Id.* at 16, 18. Medical staff noted the effects of pepper spray to plaintiff's chest and face. *Id.* at 3, 22. Plaintiff stated that he had injuries all over his body but refused to be treated by medical staff. *Id.* at 22. Medical staff noted that there were no injuries. *Id.*

### Plaintiff's Facts

Plaintiff disputes many of Cahlander's factual assertions and states the following occurred:

Plaintiff maintains that he never crossed the out-of-bounds line and never walked towards Cahlander holding up the razors. Reply (Docket No. 57) at 2. He carried over two old razors and walked near the podium in order to trade them for new razors. Opposition at 2. Cahlander told plaintiff he could not trade them, at which point plaintiff bent over to throw the old razors into a trash can. *Id.* It was at that point that Cahlander

3

sprayed plaintiff with pepper spray and then kicked and hit him with what felt like a flashlight. *Id.* Plaintiff states he was complying with instructions and getting on the ground when he was assaulted. *Id.* at 3.

Plaintiff disputes that he did not suffer any injuries. Plaintiff's Motion for Summary Judgment ("Plaintiff MSJ"), at 3. Plaintiff does not describe his injuries and points to an exhibit from the prison medical staff which quotes plaintiff as stating he had injuries all over his body. Plaintiff MSJ, Ex. C at 29 of 58. The exhibit reflects that plaintiff was assessed by medical staff and no injury was noted. *Id.*[1]

### C. Analysis

**Excessive Force Legal Standard**

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (omission in original) (internal quotation marks omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id.* (citing *Wilson*, 501 U.S. at 302-03); *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

What is required to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. *Whitley*, 475 U.S. at 320. When prison officials stand accused of using excessive force in violation of the Eighth

---

[1] Plaintiff also includes a declaration from another inmate who witnessed the incident. Plaintiff MSJ, Ex. B at 22 of 58. The other inmate states that plaintiff was at the podium removing a razor from the desk and Cahlander pepper sprayed plaintiff while plaintiff was moving away from defendant. The other inmate states plaintiff never approached Cahlander, but makes no mention of plaintiff being kicked or hit while on the ground. *Id.*

4

Amendment, the deliberate indifference standard is inappropriate. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Instead, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id.* at 6-7; *Whitley*, 475 U.S. at 320-21; *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot).

In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

A significant injury is not a threshold requirement for stating an excessive force claim. *Hudson*, 503 U.S. at 7. Whether the alleged wrongdoing is objectively harmful enough to establish a constitutional violation is contextual and responsive to contemporary standards of decency. *Id.* at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). This is not to say that the "absence of serious injury" is not relevant to the Eighth Amendment inquiry. *Hudson*, 503 U.S. at 7. The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could possibly have been thought necessary in a particular situation. *Id.*

**Discussion**

In this case, material facts remain in dispute regarding the incident and it is decisive for the outcome of the case whether plaintiff's version of the facts is correct or defendant's version is accurate. If plaintiff was not obeying orders and approached Cahlander while holding razors in a threatening manner, then no constitutional violation occurred when defendant briefly pepper sprayed plaintiff. Yet, if Cahlander pepper

5

sprayed plaintiff for no reason, and then kicked and hit him with a flashlight while plaintiff was on the ground and not resisting, then a jury could find that these actions violated the Eighth Amendment. Even if plaintiff approached Cahlander with the razors and Cahlander pepper sprayed him, there still could be a constitutional violation if Cahlander kicked and hit plaintiff with a flashlight while plaintiff was on the ground and complying with instructions.[2]

Cahlander also argues that there is no evidence plaintiff suffered any injury. While the evidence casts doubt that plaintiff suffered any injury other than being pepper sprayed and plaintiff's allegations that he suffered injuries are not fully supported by the evidence, the court must view the evidence in the light most favorable to the nonmoving party. Moreover, minor injuries will not defeat an excessive force claim. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury).

Cahlander also argues that even though there are factual disputes, summary judgment should still be granted. Cahlander contends that plaintiff's factual statement is irrelevant, contradicted by the record, and silent regarding certain material facts. While there is some support for Cahlander's contentions, plaintiff's statement of facts which the court must liberally construe, is not entirely incredible. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). While different versions of plaintiff's facts are somewhat contradictory, he still alleges that he was pepper sprayed and beaten and he never resisted.

In *Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003), the district court granted summary judgment in favor of defendants regarding a Fourth Amendment excessive force claim, and the Ninth Circuit reversed, noting that genuine issues of material fact

---

[2] Even if plaintiff's witness declaration is accurate and plaintiff went to the podium and retrieved new razors which is not allowed, defendant could be liable for kicking and hitting plaintiff while he was on the ground.

1 existed which precluded summary judgment. *Id.* at 412. The Ninth Circuit noted the

2 discrepancies between the accounts of the parties and that one side's "version of the

3 story, unsurprisingly, is very different." *Id.* Looking at the evidence in the light most

4 favorable to plaintiff, the Ninth Circuit concluded that he had met his burden in opposing

5 summary judgment. *Id.* at 417. Similarly, in looking at plaintiff's evidence in this case, he

6 has met his burden and a jury could conclude there was an Eighth Amendment violation.

7 Cahlander's motion for summary judgment is therefore denied. Because there are

8 disputed facts, plaintiff's motion for summary judgment is also denied.

### D. Qualified Immunity

10 The defense of qualified immunity protects "government officials . . . from liability

11 for civil damages insofar as their conduct does not violate clearly established statutory or

12 constitutional rights of which a reasonable person would have known." *Harlow v.*

13 *Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity

14 must determine (1) whether the plaintiff has alleged the deprivation of an actual

15 constitutional right and (2) whether such right was clearly established such that it would

16 be clear to a reasonable officer that his conduct was unlawful in the situation he

17 confronted. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (overruling requirement

18 in *Saucier v. Katz*, 533 U.S. 194 (2001), that court ruling on qualified immunity claim

19 consider first prong of test before addressing second prong). The court may exercise its

20 discretion in deciding which prong to address first. *Id.*

21 Plaintiff has adequately alleged a violation of a clearly established constitutional

22 right, in that a reasonable person in defendant's position would not have believed that it

23 was lawful to pepper spray plaintiff when he was complying with commands and then kick

24 and hit him with a flashlight while he on the ground and not resisting. Defendant is

25 therefore not entitled to qualified immunity.

### II. FURTHER PROCEEDINGS

27 In light of the court's denial of this motion, this case shall be referred to Magistrate

28 Judge Vadas for settlement proceedings pursuant to the Pro Se Prisoner Settlement

Program.  The proceedings will take place within **one hundred and twenty days** of the date this order is filed.  Magistrate Judge Vadas will coordinate a time and date for a settlement proceeding with all interested parties and/or their representatives and, within **five days** after the conclusion of the proceedings, file with the court a report of the proceedings.

### III.    CONCLUSION

1. Plaintiff's motion and defendant's motion for summary judgment (Docket Nos. 49, 51) are **DENIED**.

2. The case is referred to Magistrate Judge Vadas for settlement proceedings pursuant to the Pro Se Prisoner Settlement Program.  The clerk will send to Magistrate Judge Vadas in the Eureka Division, a copy of this order.  In view of the referral, this case is **STAYED** pending the settlement proceedings.

**IT IS SO ORDERED.**

Dated: November 18, 2015

_____

PHYLLIS J. HAMILTON
United States District Judge